**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

**CONSTANCE COPELAND**                    **CIVIL ACTION  07-2169**

**VERSUS**                                         **JUDGE DOHERTY**

**MICHAEL J. ASTRUE,**                    **MAGISTRATE JUDGE METHVIN**
**COMMISSIONER OF SOCIAL**
**SECURITY**

### *REPORT AND RECOMMENDATION*

Before the undersigned is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **REVERSED** and the case be **REMANDED**

to the Commissioner for further administrative action.

### *Background*

Constance Copeland was born on June 5, 1959 and is currently 49 years old.  She has a

high school education and past work as a cashier, stocker, and used car salesperson.  Copeland

filed for disability insurance benefits on August 20, 2005, alleging an onset date of December 6,

2003, following a motor vehicle accident.  (R112, 16).  Copeland alleged disability due to back

and neck injuries, depression, fluid around her heart (COPD),[1] and high blood pressure.  (R112-

114). Ultimately, the ALJ found Copeland not disabled at the fifth step of the sequential analysis

at any time from December 6, 2003, through the date of the Decision on August 14, 2007. (R22).

The Appeals Council denied review, and this appeal followed.

---

[1]The ALJ never mentioned Copeland's alleged COPD in her opinion at all.

### *Standard of Review and the Commissioner's Findings*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

>    5.    If a person's impairment prevents him from performing his past
>          work, other factors including age, education, past work experience,
>          and residual functional capacity must be considered to determine if
>          other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

At a video hearing[2] held on July 17, 2007, the administrative law judge found that following Copeland's December 2003 auto accident, she had engaged in substantial gainful activity through December 31, 2004, and therefore could not be considered disabled prior to January 1, 2005. (R16). This finding is not challenged on appeal.

---

[2] Copeland appeared in Lafayette, Louisiana, and the ALJ presided over the hearing from Alexandria, La.

At the second step of the analysis, the ALJ found that Copeland, who was 48 years old on the date of the decision, had severe impairments of degenerative disease and depression. (R16). The ALJ did not address her alleged COPD, and stated that her blood pressure was under control. (R16). Her findings, in pertinent part, are as follows:

> Medical evidence reveals the claimant was involved in a motor vehicle accident on December 6, 2003 and treated for minor injuries. However, she continues to experience neck and back pain. Follow-up reports and radiological evidence confirm chronic low back pain with probable lumbar facet syndrome, possible cervical facet syndrome, and cervical myofascial syndrome. She has received conservative care including cervical injections. A lumbar discography in May 2005 revealed probable symptomatic facet joint arthropathy and dysfunction at L4/5 bilaterally. She continues to receive care at University Medical Center for degenerative disc disease. The evidence reveals that her orthopedic impairments significantly impact her ability to perform work-related activities and are found to be severe, as that term is defined in the regulations.

> Medical records from University Medical Center reveal the claimant has been diagnosed and is being treated for depression. Dr. Sandra Durdin, PhD evaluated the claimant in December 2005 confirming moderate depression. She continues to need treatment and her symptoms stemming from this condition place significant restrictions on her ability to function, resulting in a severe impairment. The undersigned also acknowledges that the claimant has hypertension. However, with proper treatment this condition is under control and does not significant (sic) impact her ability to function. Therefore, this is not found to be severe.

At the third step, the ALJ found that Copeland did not have a listed impairment, and retained the residual functional capacity (RFC) to perform sedentary work with certain restrictions:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except she can only occasionally stoop, crawl, kneel, and balance. She is unable to work around moving machinery. She cannot climb ladders or scaffolds. She can understand, remember, and carry out simple instructions but would have difficulty with complex tasks. (R17).

In arriving at this RFC, the ALJ found pursuant to CFR §404.1529 and SSR 96-7p, that while Copeland's medically determinable impairments could be expected to produce her symptoms, including pain, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the weight of the evidence." (R20) In making that determination, the ALJ stated, *inter alia*, as follows:

- "She has worked at a used car lot since 2004 and only recently stopped working in February 2007. This is confirmed by her earnings records which reflect significant earnings in 2004 and scattered work activity in 2005 and 2006." (R19).

- "She takes over-the-counter medications for pain." (R19).

- "She has not needed surgery or ongoing intensive medical care. She is treated conservatively, not needing pain medication." (R19).

- "Furthermore, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (R 19).

- "Finally, the undersigned notes that the claimant's allegedly disabling impairments was present at approximately the same level of severity prior to the alleged onset date. Since that alleged onset date, she has continued to work, with her earnings being substantial at times. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." (R20)(Emphasis added).

At the fourth step, the ALJ found that Copeland could no longer perform her past relevant work as a sales representative. However, at the fifth step, after testimony from a vocational expert, the ALJ found Copeland was not under a disability as defined in the Social Security Act, 20 C.F.R. 404.1520(g).

*Assignment of Errors*

Copeland's arguments can be summarized as follows:

1)      The ALJ failed to find Copeland had severe impairments of facet joint arthropathy, bilateral stenosis, herniated thoracic disc at T9-10, cervical facet injury, and obesity;

2)      The ALJ committed legal error when she failed to consider whether the combined effects of all of her impairments, including her obesity, met or equaled a listed impairment;

3)      The ALJ misread the medical records regarding Dr. Durdin's opinion regarding Copeland's ability to sustain performance over a forty hour work week;

4)      The ALJ's residual functional capacity is not supported by substantial evidence;

5)      The ALJ failed to sustain her burden of proof at the fifth step of the analysis that there are a significant number of jobs available with Copeland's limitations; and

6)      Testimony by the vocational expert establishes that a person with Copeland's limitations, as supported by the medical evidence, would not be able to sustain employment.

*Applicable Law and Discussion*

The record is clear that the ALJ failed to consider Copeland's obesity in combination with her other impairments.  Although Copeland did not specifically list obesity as one of her impairments, this is not determinative.  *See* Beck v. Barnhart, 205 Fed.Appx. 207 (5th Cir. 2006).

The record shows that while Copeland's height at the date of application was reported as 5'2" and her weight as 189 pounds (R115), on May 31, 2007, approximately one and one-half months prior to the hearing, Copeland's weight was recorded at 230 pounds. (R314)

Obesity is a factor to be considered throughout the sequential analysis in determining whether an individual is disabled. *See* SSR 02-01. It is well-settled in the Fifth Circuit that an ALJ must consider the cumulative effects of all of an applicant's impairments:

> The law of this Circuit requires consideration of the combined effect of impairments: "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.' "

Loza v. Apfel, 219 F.3d 378, 393 & 399 (5th Cir. 2000)(internal citations omitted).

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity, and he must explain his decision. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). In the instant case, the ALJ failed to address the existence and effects of Copeland's obesity in her analysis. The failure to recognize and consider Copeland's obesity was not harmless, as her obesity may impact, *inter alia,* the severity of her other impairments and her functional limitations, including her ability to perform and sustain the demands of her work environment .[3]

Even if the ALJ's failure to recognize and consider claimant's obesity in her analysis were not reversible error, the matter should be remanded because the ALJ's credibility findings regarding claimant's pain, which in turn affected the determination of claimant's residual functional capacity and ability to sustain employment, are not supported by substantial evidence.

---

[3] According to the National Institute of Heath Body Mass Index Table, Copeland's body mass index ranged from 34 to 42. A BMI of 42 is considered to fall into Level III "extreme" obesity under the Clinical Guidelines. See SSR 02-1p.

First, the ALJ found the claimant only took over-the-counter medications for pain, and that she was treated conservatively, "needing no pain medications." (R19). However, the record is replete with multiple pain medications given throughout 2005.[4] Copeland further testified that she had taken only over-the-counter pain medications for the past two and half years, because she had not had access to anything else. (R439).[5]

Secondly, the ALJ stated "... the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision" and that "Dr. Durdin noted that the claimant is able to . . . persist at a normal pace over the course of a 40-hour workweek."[6] In fact, Dr. Durdin noted specifically that "[h]er ability to sustain effort and persist at a normal pace over the course of a forty-hour workweek is **mostly likely to be interfered with by pain**, not depression or anxiety symptoms" and "[h]er ability to tolerate the stress and pressure associated with day-to-day work activity and demands is **fair to poor depending on pain level**."[7] (R285)(emphasis added).

The ALJ's credibility choice was not supported by substantial evidence, as it was based on a misinterpretation of claimant's medical records regarding prescribed pain medications and

---

[4]R133, Ultracet; R134, Lortab; R145, Lortab; R149, Lortab; R379, Lortab; R405, Lortab..

[5]Copeland testified that the physicians at UMC would not prescribe pain medications for her back without her having "seen the back doctor." She testified she had been waiting for an appointment for years. The record shows a referral to the orthopedic clinic in Shreveport on December 6, 2005, but there is no indication that an appointment was actually set. (R379).

[6]R19.

[7]Dr. Sandra Durdin is a clinical psychologist who examined the claimant on behalf of Disability Determination Services.

Dr. Durdin's evaluation, and therefore reversal and remand are required. See <u>Olson v. Schweiker</u>, 663 F.2d 593, 596 (5th Cir. 1981).

### *Conclusion*

For all of the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED AND REMANDED** for consideration of the effect of claimant's obesity throughout the sequential analysis, and reassessment of claimant's credibility. On remand, the ALJ should also assess whether claimant's alleged COPD is a medically determinable impairment subject to the sequential analysis.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error.  See

**Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir.  1996).

Signed at Lafayette, Louisiana, on February 9, 2009.

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)